BIRD v. ST. MARK'S CHURCH OF WATERLOO.

62 567
96 64

1. **Evidence:** MEANING OF ECCLESIASTICAL TERMS: TESTIMONY OF BISHOP. The testimony of a bishop of the Protestant Episcopal church is competent to define the meaning of the terms "parish" and "rector," as used in said church.

2. ———: FACTS OR OPINIONS: EXCLUSION OF MUST BE JUSTIFIED BY OBJECTIONS STATED. The testimony of the bishop of the Protestant Episcopal diocese of Iowa as to the organization of the defendant parish, and its admission into union with the diocesan convention, was not

the expression of an opinion, but the statement by a competent witness of facts, which were relevant and material to the issues in this case; and, though the testimony may have been vulnerable to the objection that it was secondary, it was error to exclude it on the ground—the only one urged—that it was "incompetent, immaterial, and the statement of an opinion."

3. **Contract:** EMPLOYMENT OF RECTOR BY PARISH OF PROTESTANT EPISCOPAL CHURCH: RIGHT OF PARISH TO DISSOLVE PASTORAL RELATION. A parish of the Protestant Episcopal church, by its admission into union with the diocese of Iowa, and its connection through that with the Protestant Episcopal church of the United States, acknowledges the authority of the constitution and canons of that church, and becomes amenable thereto; and, according to these canons, a rector canonically elected and in charge may not be removed by his parish against his will. Neither may this be done indirectly by the reduction of his salary as contracted for at the time of his election. And, until the dissolution of the pastoral relation in some manner provided by the canons of the church, he may recover for his services the salary provided in the original contract.

4. **Religious Corporations:** INTERFERENCE OF COURTS WITH. The civil courts will not revise the decisions of churches or religious associations upon ecclesiastical matters, but will interfere with such associations when civil or property rights are involved.

ADAMS, J., *dissenting.*

: *Appeal from Black Hawk Circuit Court.*

FRIDAY, DECEMBER 14.

THE plaintiff brings this action for the recovery of $206.50, a balance which he alleges to be due him as rector, for the year 1880, of St. Mark's church of Waterloo, of the denomination known and styled "The Protestant Episcopal Church in the United States of America." Upon the production of the plaintiff's evidence, the court, upon motion of the defendant, directed a verdict for the defendant. The plaintiff appeals.

*Alford & Gates* and *C. W. Mullan,* for appellant.

*H. Boies,* for appellee.

DAY, CH. J.—I. The plaintiff took and offered in evi-

dence the deposition of William Stevens Perry, bishop of

1. EVIDENCE:
meaning of
ecclesiastical
terms: testi-
mony of
bishop. ·

the Protestant Episcopal diocese of Iowa. The defendant moved to suppress interrogatories five and six, and the answers thereto, in this deposition, upon the ground that they were immaterial and incompetent, and the answers state an opinion or conclusion of the witness, instead of facts, and are not pertinent to any issue involved in the action. The court sustained the motion, and this action the plaintiff assigns as error. The portion of the deposition suppressed contains the following evidence: "A parish is also the individuals who associate themselves under articles of incorporation, and, in their formal application for admission, on their pledge of conformity to the diocesan and general legislation of the church, are received into union with the diocesan convention. St. Mark's parish, Waterloo, is such an association of individuals, formerly admitted into union with the diocesan convention of The Protestant Episcopal church in Iowa, in 1863, and still in union with said convention, and, in common with other parishes, amenable to the diocesan and general canons. A rector, as the word is understood by the canons of the church, is a duly ordained clergyman of the church, in priest's orders, who has been elected to the rectorship by the vestry of the parish, agreeably to the canons of the church, and in whose call, or invitation, or notification of election, there is no limitation of time specified when the engagement, or contract (for such the engagement between the clergyman and vestry, as two principals, is considered) is to cease."

This portion of the deposition was improperly stricken out. It was certainly competent to prove by the bishop of the church the meaning of the words parish and rector, as understood by the canons of the church. But the important and material portion of this testimony is that which states that

2. ——: facts
and opinions:
exclusion of
must be
justified by
objection
stated.

St. Mark's parish, of Waterloo, was formally admitted into union with the diocesan convention of The Protestant Episcopal church in Iowa. Such admission rendered the defendant

amenable to the canons of the church which, the evidence shows, are adopted by general or diocesan conventions—the general convention composed of clerical and lay deputies, meeting every three years, and possessing supreme legislative power, and the convention of the diocese, composed of the clergy and lay deputies from each parish, meeting annually. It was not objected that this evidence was secondary, but that it was incompetent, immaterial, and the statement of an opinion. The evidence was both competent and material, and the statement of a fact and not of an opinion. The court erred in suppressing it.

II. The error of the court in rejecting the evidence offered is, however, immaterial, unless the testimony offered, in connection with that produced upon the trial, was sufficient to warrant a finding for the plaintiff. It therefore becomes necessary to consider the effect of the entire testimony offered by the plaintiff. The evidence shows that the association of St. Mark's church, of Waterloo, Iowa, adopted articles of incorporation, the preamble to which is as follows: "We, whose names are hereunto affixed, deeply sensible of the truth of the Christian religion, and earnestly desirous of promoting its holy influences in our own hearts, and in those of our families and neighbors, do hereby associate ourselves under the name of St. Mark's parish, in communion with the Protestant Episcopal church in the United States of America and the diocese of Iowa, the authority of whose constitution and canons we do hereby recognize, and to whose liturgy and mode of worship we promise conformity."

Article one provides: "This association is incorporated by the name and style of St. Mark's church of Waterloo, Black Hawk county, Iowa."

Article five provides: "The members of this corporation desire admission into union with the convention of the diocese of Iowa." Bishop Perry testifies that St. Mark's parish,

*3. CONTRACT: employment of rector by parish of protestant episcopal church; right of parish to dissolve the pastoral relation.*

Waterloo, was formally admitted into union with the diocesan convention of the Protestant Episcopal church in Iowa, in 1863. The diocese of Iowa comprises the entire state, and was, on joint vote of two houses of general convention, admitted into union with the church in the United States. The constitution of this diocese, article one, provides as follows: "This church, as a constituent part of the Protestant Episcopal church in the United States of America, acknowledges the authority of said church.

The fifth canon, section three, provides: "It shall be the duty of the vestry to elect the rector, except in the case of the bishop's church, and supply services where there is no rector."

Section five provides: "Wherever the term rector is used in this or any other canon of this diocese, it is to be understood of any minister duly elected by the vestry to the charge of a parish; and it is hereby recommended that every rector be instituted, according to the provisions of the church."

Canon four, title two, of the canons for the government of the Protestant Episcopal church in the United States of America is entitled: "Of differences between ministers and their congregations, and of the dissolution of a pastoral connection." Section one provides: "A rector canonically elected and in charge, or an instituted minister, may not resign his parish without consent of said parish, or its vestry, (if the vestry be authorized to act in the premises,) nor may such rector or minister be removed therefrom by said parish or vestry against his will, except as hereafter provided."

The next section provides for the dissolution of the pastoral relation, when the parties cannot agree respecting the separation, by the bishop, acting with the advice and consent of the standing committee of the diocese or missionary jurisdiction."

At a meeting of the vestry of defendant, December 23, 1878, "it was moved and carried unanimously to accept Rev.

F. M. Bird's proposition to become rector of St. Mark's parish at a salary of $1,000 a year. It was resolved that the secretary notify Rev. F. M. Bird of his election as rector of St. Mark's parish." On January 4, 1879, the secretary of the vestry gave the plaintiff formal notice in writing of his election, as follows: "I take great pleasure to inform you that, at a meeting of St. Mark's vestry, December 23, 1878, you were elected as rector of St. Mark's parish, service to commence and date from January 1, 1879." The plaintiff accepted this appointment, and entered upon the discharge of his duties January 1, 1879. For that year he was paid in full, one thousand dollars. In the month of November, 1879, he received a communication from the secretary of the vestry, as follows: "At a meeting of St. Mark's vestry, held November 11, 1879, the following resolution was introduced and adopted: 'Resolved, That, whereas there will be a large deficiency in the finances for the present year, and there being no prospect for an increased revenue for the coming year, and not desiring to incur any liability in excess of our resources, we hereby tender you for your salary in full, for the year 1880, the full proceeds of pew rents.'" The plaintiff communicated with the vestry very shortly after this notice, and told them that it was not in their power to set aside the contract without his consent, which consent he refused to give, and that he held them to their contract as binding. At a meeting in January, 1880, a member of the vestry desired the plaintiff to accept the pew rents for 1880, and relieve the vestry of further responsibility, which the plaintiff refused to do, and he never at any time assented to the defendant's proposition. The plaintiff continued to perform the duties of rector until January 1, 1881, when the relation between him and the parish was dissolved. For the year 1880, the plaintiff has received the pew rents, amounting to $793.50. He claims that he is entitled to the sum of $1,000 for that year.

The defendant, by its articles of incorporation, its admis-

sion into union with the diocese of Iowa, and its connection through that with the Protestant Episcopal church of the United States, acknowledged the authority of the constitution and canons of that church, and became amenable thereto. One of these canons is that a rector canonically elected, and in charge, may not be removed by his parish, against his will. The plaintiff was elected rector by the vestry of defendant in accordance with the canons of the diocese of Iowa. When he accepted the position and entered upon the discharge of his duties, the relation between him and his parish was assumed under, and became subject to, the canons relating to differences between ministers and their congregations, and the dissolution of a pastoral connection. It was not competent for the vestry of the parish, in violation of the canons of the church, to dissolve the pastoral relation against the plaintiff's will. These canons became just as much a part of the contract of employment of plaintiff as if they had been specifically referred to, or written out in full therein. The salary upon which the plaintiff was employed constitutes an essential part of the contract. If the defendant could be permitted to reduce the plaintiff's salary without his consent, it could force him to agree to a dissolution of the pastoral relation, and thus accomplish indirectly what it could not do directly. The right to the salary stipulated at the time the plaintiff accepted the position of rector is a valuable property right secured to the plaintiff by contract. One party to the contract cannot ignore its provisions or violate them with impunity. The civil courts will not re-

4. RELIGIOUS vise the decisions of churches or religious assocorporations: ciations upon ecclesiastical matters; but they will of courts with. interfere with such associations when rights of property or civil rights are involved. *Chase v. Cheney*, 58 Illinois, 509, (537); *O'Hara v. Stack*, 90 Pa. St., 477, (491); *Avery v. Inhabitants of Tyringham*, 3 Mass., 159, (167;) *Sheldon v. Congregational Parish*, 24 Pick., 281; *Lynd v. Menzies et al.*, 33 N. J. L., 162; *Batterson v. Thompson*, 8

Phil. Rep., 251. In this case the plaintiff has performed the duties of rector for the defendant for the year 1880. He has been paid but a part of the salary promised him when he assumed the duties of that position. He has never consented to a reduction of his salary. A clear legal right of the plaintiff has been invaded, and it is the duty of the civil courts ·to protect and enforce that right. We think the plaintiff is entitled to the balance of the salary which formed the consideration of the contract between him and the defendant. The judgment of the court below is

REVERSED.

ADAMS, J.—*dissenting.* The defendant is a religious corporation incorporated under the laws of Iowa. The provisions of law under which the defendant was incorporated cannot be dispensed with by contract. One of the provisions of law under which the defendant is incorporated is that the corporation may annually or oftener elect from its members trustees, directors or managers. Another provision is that the trustees, directors, or managers shall have the control and management of the affairs of the corporation. Code, § 1097. The defendant elected trustees, directors, or managers, which it called vestrymen. Under the statute, I think that they had the control and management of the affairs of the corporation. What precisely the word "affairs," as used in the statute, embraces, when applied to a corporation like the defendant, we need not determine. It may be that affairs of such a corporation which are of an ecclesiastical or canonical character are not within the control of the vestrymen. But some affairs manifestly are, and I think that all are which pertain strictly to the civil rights and liabilities of the corporation. Among them is the matter of its finances. The vestrymen are supposed to understand its resources, present and prospective, and must be allowed to determine from time to time its expenditures, and graduate them accordingly. An incurment of liabilities beyond its resources

would not only be bad management, but bad morals. Even the religious interests of the society would probably suffer, to say nothing of the rights and interests of others. The statute has accordingly reposed this matter of financial administration where it can be done most safely. It has reposed it in a board of men selected expressly for their qualifications for such administration from the society itself. The power to dissolve the pastoral relation is quite a different thing. It may be that such power may properly enough be reposed elsewhere. The expediency of such dissolution may rest upon considerations of which others not so immediately interested can more properly judge. For the purposes of this opinion it may be conceded that this power is not reposed in the vestrymen. But it does not follow that they may not be allowed full control of the financial affairs of the corporation, including that of the compensation of the rector, so far as that is a matter of contract on the part of the corporation. It is not to be supposed that such a board would withhold compensation for the mere purpose of accomplishing by indirection the dissolution of the pastoral relation in violation of a canon of the church. If such a case should occur, it may be that the action would be void. But that is certainly not the case before us. The defendant appears to have acted in the utmost good faith. So far as I can see, it pledged all its resources upon which it could rely with any certainty.

I think that we may give the statute full force, and not materially interfere with the canon which the plaintiff invokes in his behalf. But, if there is any conflict, the statute must be held paramount.