R. J. PARK, *et al.*, Appellants, v. HIRAM CHAPLIN, *et al.*

Ecclesiastical Law: PROPERTY RIGHTS. A body incorporated as a Free Baptist Church was deeded property without declaration of trust in the deed. It became a member of a Quarterly Meeting whose manual provides that any church in the body which requests permission to join another Quarterly Meeting or other ecclesiastical denomination shall receive a letter of recommendation. Upon a vote of twenty-five for and five against it was ordered that said church should join the Baptist Church and carry its property to it. The Free Baptist and the Baptist churches hold to different doctrines. *Held*, this action should be enjoined so far as the property is concerned, though the proposed change would be a benefit in worldly prosperity, wealth, popularity and membership.

Granger and Rothrock, JJ., dissenting.

*Appeal from Blackhawk District Court.*—HON. J. L. HUSTED, Judge.

SATURDAY, OCTOBER 19, 1895.

Action in equity to enjoin the defendants from withdrawing the First Free Baptist Church of Waterloo, Iowa, from the Free Baptist and uniting with the Baptist denomination. The plaintiffs filed a petition in which an injunction was asked. A temporary injunction was granted and thereafter an answer was filed, and also a motion, supported by affidavits to dissolve the injunction. Affidavits in resistance were filed, and the cause was submitted on the motion, which was sustained. From that order the plaintiffs appeal.—*Reversed.*

*F. C. Platt* for appellant.

Where a conveyance is merely to a religious corporation by its name, the corporate or denominational

name, in connection with the contemporaneous acts of the corporators, will be a sufficient guide as to the nature and objects of the trust.

2 Potter, Corp. section 572; *Bear v. Heasley*, 98 Mich. 279, 24 L. R. A. 615; *Roshi's Appeal*, 69 Pa. 465, 8 Am. Rep. 275; *Harrison v. Hoyle*, 24 Ohio St. 263; *Wiswell v. First Cong. Church*, 14 Ohio St. 44; *App v. United Lutheran & G. Ref. Cong.* 6 Pa. 201; Strong, Relations of Civil Law to Church Polity, pp. 45-49; *Mannix v. Purcell*, 46 Ohio St. 102, 2 L. R. A. 753; *Curd v. Wallace*, 7 Dana, 190, 32 Am. Dec. 85.

The persons by whom this church was built solemnly covenanted before God to labor together for the building up of the Free Baptist Church and denomination.

The covenant is a part of the by-laws of the church and as such it is binding upon the corporators and the members as a part of the organic law of the corporation, as though a part of the certificate of incorporation.

*Bear v. Heasley*, 98 Mich. 279, 24 L. R. A. 615; *Dressen v. Brameier*, 56 Iowa, 756.

Property acquired by a church society or corporation while in connection with, or in subordination to some ecclesiastical organization, denomination, or form of government, cannot be transferred to another denomination, even though a majority of the members of the society favor such a transfer, nor may a religious society so endowed unite with some other denominational organization, or become literally independent, or renounce its faith and doctrine and adopt others.

*McGinnis v. Watson*, 41 Pa. 14; *Schnorr's Appeal*, 67 Pa. 146, 5 Am. Rep. 415; *Roshi's Appeal*, 69 Pa. 466, 8 Am. Rep. 275; 2 Potter, Corp. section 566-578, 20 Am. & Eng. Enc. Law, pp. 781, 783, 797-799; *Avery v. Baker*, 27 Neb. 388; *Hendrickson v. Shotwell*, 2 N. J. Eq. 577; *Baker v. Ducker*, 79 Cal. 365; Beach Priv. Corp. p. 583,

section 358; High, Inj. section 314; *First Cong. Church v. Stewart*, 43 Ill. 81; *Hale v. Everett*, 53 N. H. 9, 16 Am. Rep. 82; *Hackney v. Vawter*, 39 Kan. 615; *White-car v. Michenor*, 37 N. J. Eq. 6; *Dressen v. Brameier*, 56 Iowa, 756; *Bear v. Heasley*, 98 Mich. 279; 24 L. R. A. 615; *Bird v. St. Mark's Church*, 62 Iowa, 567; *Rottman v. Bartling*, 22 Neb. 376; *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa, 138, 13 L. R. A. 198.

Not only profession of the faith of the church, but submission to its government and discipline, is necessary to membership therein.

26 Am. & Eng. Enc. Law, p. 779.

Proof that the property is in an unprosperous condition is immaterial. The court will not decree a dissolution of the corporation against the will of the minority.

20 Am. & Eng. Enc. Law, p. 827.

And it is immaterial what amounts of money have been paid for church purposes by the minority. Their rights do not depend upon that question.

*Dresssen v. Brameier*, 56 Iowa, 761.

A fund given for the benefit of a voluntary religious society accrues to the use of the same society after incorporation.

20 Am. & Eng. Enc. Law, pp. 802, 804, note, 3; *Miller v. Chittenden*, 4 Iowa, 252.

The fact that defendants withdrew from the church and formed a new congregation amounted to a relinquishment of all their rights in regard to the church from which they withdrew.

*Bouldin v. Alexander*, 82 U. S. 15 Wall, 131, 21 L. ed. 69; *Methodist Episcopal Church v. Wood*, 5 Ohio, 283; *Harper v. Straws*, 14 B. Mon. 48; *Venable v. Coffman*, 2 W. Va. 310; *Atty. Gen. v. Dublin*, 38 N. H. 459; *Hadden v. Chorn*, 8 B. Mon. 70; Beach Priv. Corp, p. 183, paragraph 99; 2 Potter, Corp. section 567.

On an attempt to divert the church property the parties cease to be trustees, and may be enjoined accordingly.

20 Am. & Eng. Enc. Law, p. 825; *Rottmann v. Bartling*, 22 Neb. 375.

The First Free Baptist Church of Waterloo, by its articles of incorporation, its by-laws, its membership in Cedar Valley Quarterly Meeting, and its connection through that with the Iowa Yearly Meeting, and the General Conference of Free Baptists, acknowledged the authority, doctrines, and practice of the Free Baptist denomination and became amenable thereto.

*Bird v. St. Mark's Church*, 62 Iowa, 567.

Where property interests are threatened or affected, a court of equity will extend its strongest arm in protection.

Beach, Priv. Corp. p. 124, paragraph 60, note, p. 183, paragraphs 99, 100, p. 583, paragraph 358; 20 Am. & Eng. Enc. Law, pp. 795, 797, notes, 3, 4, pp. 800, 825; 2 Potter, Corp. sections 565, 568, 569, 572, 581, 582, 591; *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa, 138, 13 L. R. A. 198; 1 High, Inj. section 314.*

*Alford & Gates* for appellees.

Robinson, J.—The petition alleges and the answer admits the following facts: On the twenty-seventh day of April, 1868, the "Waterloo Free Will Baptist Society" was duly incorporated under the laws of this state as a religious association. The object of the association, as declared in the certificate of incorporation, was "the building and erection of a church or house of worship, and the diffusion of the gospel." In December, 1892, the certificate was so amended by a unanimous vote of the society as to change its name

---

*NOTE—See *Mt. Zion Baptist Church v. Whitmore*, 83 Iowa, 147, as to change of doctrine. See also *Krecker v. Shirley* (Pa.) 29 L. R. A. 476, and *College v. Wyatt* (Ore.) 26 L. R. A. 68.

to the "First Free Baptist Church of Waterloo," and
provide for five instead of three trustees. On the
fourth day of January, 1894, at a meeting held by mem-
bers of the church, a resolution was adopted, a copy of
which is as follows: "We, the members of the First
Free Will Baptist Church of Waterloo, Iowa, resolve
that the name of said church be changed from the one
by which it has formerly been known to the 'Free Bap-
tist Church of Waterloo, Iowa,' by which name it shall
hereafter be known, and that article first of its certifi-
cate of incorporation be amended accordingly." The
article referred to was the one which gave the church
its name. The petition also contains averments, some
of which are not admitted by the answer, to the fol-
lowing effect: The amendment adopted in December,
1892, did not change the articles of faith or belief of
the church. The church is under the patronage of the
General Free Baptist Conference, and it is particularly
under the patronage and is a member of the Cedar Val-
ley Quarterly Meeting, a regularly constituted body,
comprised of nine churches. The vote on the adop-
tion of the resolutions of January 4, 1894, was twenty-
five for, and five against, it. At the same meeting the
following was adopted: "Resolved, That we, the mem-
bers of the Second Baptist Church, of Waterloo, Iowa,
appoint the trustees of said church a committee to
inform the Baptist denomination that we, as a church,
desire membership in their denomination, measures
having been adopted by us which we trust will bring
about such a union." This was voted against by the
same persons who opposed the other resolu-
tion. The religious belief and the articles of
faith of the Baptist Church or denomination are
radically different from those of the Free Baptist
Church, and each has a separate and distinct organi-
zation, and is governed by its own officers, laws, and

rules. The petition further alleges that, by the adoption of the two resolutions set out, the persons voting therefor declared their secession from the First Free Baptist Church of Waterloo, and from the General Free Baptist Conference, and from the Cedar Valley Quarterly Meeting, and thereby abandoned the religious belief and creed of the First Free Baptist Church of Waterloo, and then and there withdrew from that church; and that the property of the church was acquired for the purpose of advancing Christianity according to the religious belief, principles, and creed of the Free Baptist Church, to which the plaintiffs still adhere; that the property has been dedicated to the uses and purposes consistent with the religious belief and creed of that body; that the defendants are attempting to alienate the property of the Free Baptist Church of Waterloo, and to prevent the plaintiffs and others from enjoying those rights which have been assured them by the acquisition and dedication of that property to the purposes and uses of that church; that neither the General Free Baptist Conference nor the Cedar Valley Quarterly Meeting has, by vote or otherwise, expressed its approval of the proposed change in the certificate of incorporation of the First Free Baptist Church of Waterloo, and has not been applied to for such consent; that, if the instructions contained in the resolutions are carried out, a cloud will be cast upon the title of that church as to its real property in Waterloo, which is particularly described, and that the plaintiff and other members of the church who adhere to its religious belief will be threatened with the loss of the rights and privileges to which they are entitled as members of the church, if they are not actually deprived of them; that, if the proposed amendment is adopted, the rights of the said persons will be unlawfully infringed and invaded, and the standing of the

church as a Free Baptist organization and its influence
in the community for the promotion of the doctrines of
the Free Baptist Church will be irreparably injured;
and that the defendant trustees threaten to carry the
resolutions into effect, and will do so unless restrained.
The plaintiffs are two of the members of the First
Free Baptist Church of Waterloo, and, as such, are in
good standing.    That church and its trustees are made
parties defendant.

The defendants contend that the First Free Bap-
tist Church of Waterloo is an independent body, not
subject to the control of any superior body; that it is
at liberty to form its own creed, and does now and has
always regulated it own affairs, without any right of
interference or control on the part of any superior or
other body; that there is now no radical difference
between the belief and articles of faith of that church
and the Baptist Church; "that several years ago there
was a very substantial difference in the articles of faith
and religious beliefs of the two churches, but that for
many years the two denominations have been grad-
ually drawing nearer to each other in creed, belief, and
articles of faith, the regular Baptist denomination
having dropped from its creed, belief, and articles of
faith the portions thereof, or the most of the portions
thereof, which were repugnant to the early founders
of the denomination of Free Will Baptists or Free Bap-
tists, with which denomination the defendant church
was heretofore affiliated, and at the same time the lat-
ter denomination has dropped from its creed, belief,
and articles of faith, or modified, some of the tenets
thereof which were originally repugnant to or mate-
rially different from the religious faith and belief of the
regular Baptist denomination; that the tenets of belief
of said denominations have changed, and can but
change; that any attempt to anchor the beliefs of

denominations immovably in the stream of time is beyond human power, opposed to progress and advancement, and an effort to halt on the great onward march of thought." The defendants further allege that the defendant church is weak in numbers; that few of them are possessed of large means; that in consequence it is impossible for the church to employ a regular or permanent pastor; that it has been without a pastor a portion of the time for several years; that in consequence many of its members have gone away, and now affiliate with other churches, and that, if the resolutions are not carried into effect, other members will also attach themselves to other churches; that if the resolutions are carried out, and the Baptist denomination receives the church, its membership and revenue will be greatly increased, it will be enabled to employ a pastor permanently, and members will be prevented thereby from going to and affiliating with other churches; that it will not be necessary for any members to subscribe to the articles of faith of the Baptist denomination, because the articles of faith of the two churches are substantially the same; that, if then unable to employ a pastor, assistance will be received from the Baptist denomination, which is the larger and stronger of the two; that the only effect of carrying out the resolutions will be to change the name of the church, and place it in the Baptist denomination; that the property of the church described in the petition was conveyed to it without qualification or limitation, and without dedication to any particular use or purpose; that it is held subject to the will of a majority of the church members, and that the cause of Christianity will be advanced by the making of the proposed change; that, if it is made, the church, if received into the Baptist denomination, will continue to be a separate and independent body, with a perfect right to formulate and change its own

creed or religious belief. The defendants further aver that the property of the defendant church is held without dedication to any special use; that no trust is expressed in its deed or results from its ownership; and that this court has no jurisdiction in equity of the case, the relief, if any, to which the plaintiffs are entitled, being within the defendant church.

In addition to the facts admitted by the pleadings, the evidence shows the following: The terms "Free Baptists" and "Free Will Baptists" are identical in meaning, and are used to designate persons of the same religious belief who are members of the same denomination; and the change in name adopted by the defendant church in December, 1892, had no effect upon its creed or declaration of principles, nor upon its relation to other churches. The title to the church edifice and the lot upon which it stands is vested in the defendant corporation, the First Free Baptist Church of Waterloo; and unless the defendants are prevented from carrying the resolutions of January, 1894, into effect, that organization will be withdrawn from the Free Baptist denomination, and, if received by the Baptist denomination, will become a part of it.

The change proposed, if accomplished, will transfer, not only the organization, but the property of the defendant church, to the Baptist denomination, and that will have the benefit of both the organization and its property, including that in controversy. We do not understand that any party to the action questions the fact that the property would go with the corporation; but it is claimed by the appellees that the defendant church is a civil corporation, in which a majority rules, and that each church, in both the Free Baptist and Baptist denominations, has the right to fix and adopt its articles of faith and covenant; that the only effect of the proposed change would be to

place the defendant church in the Baptist denomination; and that it would there continue to be independent, without any change in its articles of faith or covenant.

The appellants claim (1) that the church edifice, and the lot on which it is situated, have been dedicated to the use of the Free Baptist denomination, for the advancement of Christianity according to the religious beliefs of that denomination, and that, therefore, they cannot be transferred to any other denomination; (2) that the attempt to carry out the resolution in question is an effort to alienate the church property, and place it beyond the control of those who are adhering to the doctrine professed by the congregation and the form of worship in practice at the time of the dedication of the property and the creation of the trust; (3) that the appellees have not pursued the statutory provisions in regard to the changing of articles of incorporation of religious societies; (4) that a court of equity has jurisdiction to determine the questions affecting the property interests of the defendant church.

The questions we are required to determine are only those which relate to the property rights of the parties to this action. "Civil courts will not revise the decisions of churches or religious associations upon ecclesiastical matters, but they will interfere with such associations when rights of property or civil rights are involved." *Bird v. St. Mark's Church,* **62** Iowa, **573** (17 N. W. Rep. 747), 20 Am. & Eng. Enc. Law, 799. And, when controversies of which the civil courts have jurisdiction arise in such bodies, the courts will inquire as to the purpose for which they were instituted and the rule by which they are governed, and, so far as practicable, they will be given effect. *Rottmann v. Bartling,* Nebraska, 35 N. W. Rep. 143; *Attorney General v. Pearson,* 3 Mer. 409; *Harrison v. Hoyle,* 24 Ohio St. 254.

It was said in *Mt. Zion Church v. Whitmore*, 83 Iowa, 147 (49 N. W. Rep. 81), that, "upon authority so general as to be beyond question, it is held that property given or set apart to a church or religious association for its use in the enjoyment and promulgation of its adopted faith and teachings is by said church or association held in trust for that purpose, and any members of the church or association less than the whole may not divert it therefrom." This leads us to inquire whether the property in question is held in trust.

4      On the day on which the articles of incorporation of the defendant church were adopted and its organization perfected, the lot on which the church edifice was afterwards erected was conveyed to the society by warranty deed, which recited the payment of a consideration, but did not contain any declaration of trust. Whether the property in controversy is to be regarded as held in trust does not wholly depend upon the terms of that instrument. In determining its character, we may properly examine the articles of incorporation of the defendant church, its declaration of faith and practice when the funds for the purchase of the lot and for the erection of the building thereon were obtained, and the purpose which the funds were provided to aid. The church record book shows that persons who desired to be organized into a Free Will Baptist Church met in Waterloo in January, 1867; a council previously authorized by the Waterloo Quarterly Meeting, having been chosen, was organized; church letters were read; the church covenant was read and adopted; and a resolution to organize a church to be known as the "Free Will Baptist Church," was adopted; and the church appears to have been organized. The church covenant bound the members to labor together for the building up of the church and the denomination, to contribute for the support of the

ministry and for other church expenses, to be benevolent to the needy, especially to the poor of their own church, and to sustain the benevolent enterprises of their own denomination and church, such as missions, education, Sabbath schools, and moral reform. At a later date, application was made to the Waterloo Quarterly Meeting for admission to that body, and afterwards to the Cedar Valley Quarterly Meeting, to which it appears to have been admitted. In April, 1868, steps were taken to erect a church building, money was subscribed for that purpose, and the building was constructed. All that was done in the organization of the church and in procuring the property in question was in the name of the Free Will Baptist Society, and at all times until January, 1894, it appears to have acted with and as a part of the Free Baptist denomination.

We have no doubt that the property was obtained for the use and benefit of that denomination. It is said, however, that there is no practical difference between that and the Baptist denomination. They are similar in many respects, especially in matters of organization and government, and both recognize the Bible as the only infallible rule of faith and practice. But there are important differences of belief which have thus far prevented a union of the two denominations, and recent agitations for a union have shown that they will continue separate for an indefinite period of time. The evidence before us shows that the faith of the Baptist denomination is Calvinistic, and it is briefly stated as follows: "The belief in original sin or total depravity; predestination; particular redemption; effectual calling and perseverance of the saints." The Free Baptist faith is based upon the doctrines of Arminius, and is stated to be: "(1) Conditional election and reprobation, in opposition to absolute predestination. (2) Universal redemption,

or that the atonement was made by Christ for all mankind, though none but believers can be partakers of the benefit.   (3) That man, in order to exercise true faith, must be regenerated and renewed by the operation of the Holy Spirit, which is the gift of God.   (4) That the grace which confers this is not irresistible.   (5) That men may relapse from a state of grace, and die in their sins." Differences not disclosed by these statements of faith also exist.   It is not any part of our duty to decide whether the difference between the respective articles of faith, covenants, and practice of the two denominations is substantial.   It may be true that changes in such matters are constantly going on, and that it is beyond human power to prevent them; that in those things which make for worldly prosperity, as popularity, wealth, and numbers, the defendant church would be greatly benefited by its union with the Baptist denomination as proposed; but considerations of that kind have nothing to do with the legal rights of the parties to this action, and cannot be given weight in determining the questions of which we have jurisdiction.   It is enough for the purposes of this case that the two denominations are now separate and distinct; that the property in controversy was acquired by the defendant church for the special benefit of one of them; and that the plaintiffs, being members of that church and of that denomination, object to the proposed change and insist that it shall not be made.

According to the usages of the Free Baptist denomination, it is the duty of each of its churches to unite with some Quarterly Meeting that is composed of two or more churches of the denomination, and has a constitution for its government.   The functions of the Quarterly Meeting appear to be chiefly advisory. It cannot deprive a church of its independent form of government, nor its right to discipline its own mem-

bers, nor labor with individual members of the churches as such, but it has the right to labor with the church as a body, in case of unscriptural or disorderly walk, and may determine whether a church is worthy of its fellowship. Some importance is attached to a provision in the "Manual of Church Government" in regard to the business of the Quarterly Meeting, which reads as follows: "When a church in good standing requests a dismission to unite with another Quarterly meeting, or with another Evangelical denomination, a letter of dismission and recommendation is given." It is urged that this recognizes the right of a church to unite with another Evangelical denomination, but it does not purport to authorize the majority of any church to transfer the property of the church, and appears to refer to the church as an ecclesiastical, rather than as a purely legal body. We find nothing in the record before us to show that the Quarterly Meeting has any authority in matters of property, and nothing to show that the defendant church was so organized that a majority of its members may dispose of its property for the benefit of another denomination, either directly or indirectly, in the manner attempted in this case. The property was acquired, as stated, for the use and benefit of the Free Baptist denomination, without any condition, expressed or implied, that it might be transferred to another, and it cannot be so transferred against the objections of members of the church, however few in number.

We are aware that our conclusion is not in harmony with the decisions in some of the states, especially those of New York; but it is according to the doctrine heretofore announced by this court, and appears to us to be supported by the weight of authority, and to be founded on principles of equity. It must be understood that what we have said has special

reference to the rights of the defendants to transfer the property in controversy to the Baptist denomination. Since the resolutions in question cannot be carried out without affecting prejudicially the interests of the plaintiff in that property, the defendants are enjoined from carrying them into effect. Nothing we have said is to be construed to affect any right the defendant church has to withdraw as a church from the Free Baptist and unite with the Baptist denomination; but the withdrawal, if carried out, must be so effected as not to change or cloud the title to the property in controversy. The decree of the district court is *reversed*.

Given, C. J. (dissenting).—I do not concur in the foregoing opinion. It seems clear to me that under the "Manual of Church Government" quoted in the opinion, this church, as a body, has a right to unite with any other Evangelical denomination, and to take its property with it. It is in this provision that this case differs from those cited. I do not question the doctrine that, when a church property is held exclusively for the promulgation of the faith and teachings of a particular denomination, it cannot be diverted to any other use by any number of the members less than the whole. To permit such a diversion would be a breach of the trust under which the property is held. Such is not this case. The opinion recognizes the right of this body to unite with the Baptist denomination, or, at least, declines to say that it may not. That is just what it was proceeding to do, and in the way provided, when this suit was commenced, and that is what the district court held it might do. The opinion does not prevent this church from consummating the union, but holds that it must be in such way as not to change or cloud the title to its property. If this property was held exclusively for the promulgation of the faith and

teaching of the Free Baptist denomination, this would be correct, but it was not acquired nor is it held for that exclusive purpose. It was acquired by this body, and is owned and held by it for the promulgation of the faith and teachings of whatever Evangelical denomination it may see fit to unite with. It is therefore no breach of the trust under which this property was acquired and is being held, to allow the owner to use it in promulgating the faith and teachings of any Evangelical denomination with which it may see fit to unite. To say otherwise is to deny to the defendant church the right to hold and use its own for the purpose for which it was acquired and held. Whether such a union may be effected by a bare majority need not be considered, as the record shows that, of a membership of about sixty, fifty-four are in favor of the body uniting with the Baptist denomination. I think the decree of the district court should be *affirmed.*

Rothrock, J., concurs in this dissent.