NORTH CAROLINA CHRISTIAN CONFERENCE v. JOHN ALLEN.

(Filed 9 November, 1911.)

1. Religious Denominations—Congregational—Individual Churches —Management—"Conference."

In a congregational religious system or denomination, as distinguished from a connectional one, the association of churches is purely voluntary for the purpose of joining their efforts for missions and similar work, having no supervision, control, or governmental authority of any kind over the individual congregations, which are absolutely independent of each other.

2. Same—Appointment of Pastor.

A congregational association of churches has no authority to appoint a pastor for one of its churches to supersede the one whom that church has regularly appointed.

3. Same—Trustees at Will—Notice—Interpretation of Statutes.

A church has authority to appoint a "suitable number" of its own trustees under our statutes for the purpose of acquiring and holding church property, "from time to time and at any time . . . in such manner as such body, etc., deem proper," and remove them or any of them at will, and while the congregational regulations of the denomination with which the church in question is affiliated has provided a notice to be given for the trial of "offenses," it does not apply to the election or removal of trustees nor take from the church its rights when in conflict with the statutes. Revisal, secs. 2670, 2671.

4. Same—"Majority Rule"—Interference.

A church of the congregational system having the right under our statutes to remove its trustees or any of them at will, and having duly and regularly elected certain trustees to supersede several theretofore elected, holds the church property through those trustees later elected, and has the right to the use of the church for religious services without molestation from the trustees removed, or from its conference; especially so, in this case, where the trustees as newly constituted were a majority, even counting the deposed ones.

ALLEN, J., dissenting.

APPEAL from *Daniels, J.,* at May Term, 1911, of GRANVILLE. The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*B. S. Royster, A. A. Hicks, and T. T. Hicks for plaintiff. Graham & Devin for defendant.*

CLARK, C. J.   This was an action by the North Carolina Christian Conference and several members of the "Rock Spring Christian Church, colored," for an injunction against Rev. John Allen, Thomas Grissom, John Meadows, Ben. Smith, and James Bailey from interfering with the plaintiffs in their occupation and control of said "Rock Spring Christian Church" building and property and their conduct of public worship in said building.

It appears by the evidence, both for the plaintiffs and defendants, that said "Rock Spring Christian Church," and it is so found by the judge, is of the Christian faith, whose government is congregational, and that the North Carolina Conference of said church is a merely voluntary association, exercising no control over the church property or the congregations, and hence the plaintiff, the North Carolina Christian Conference, has no right or interest in the church property and is not a proper party to this action.

In *Simmons v. Allison,* 118 N. C., 770, we had occasion to call attention to the distinction between those churches whose organization is connectional, such as the Protestant Episcopal, the various Methodist churches, the Presbyterian, the Roman Catholic, and others which are governed by large bodies, such as dioceses, conferences, and synods and the like, in which the individual congregations bear the same relation to the governing body as counties bear to the State, and, on the other hand, the congregational system which is in use among the Baptists, the Congregational, and the Christian and other denominations. In these latter, the individual congregation is each an independent republic, governed by the majority of its members and subject to control or supervision by no higher authority. To the latter order the "Rock Spring Christian Church" belonged. The churches of the congregational system often combine into associations, conferences, and general conventions. But unlike such organizations under the connectional system, these bodies under the congregational system are purely voluntary associations for the purpose of joining their efforts for missions and similar work, but having no supervision, control, or governmental authority of any kind whatsoever over the individual congregations, which are absolutely independent of each other.

To the latter system the "Rock Springs Christian Church, colored," belonged. It appeared in evidence that this congregation had reëlected the Rev. John Allen their pastor, in the fall of 1909. He had already served as such for eight years. Soon afterwards, on Sunday, 18 December, 1909, Rev. J. A. Alexander appeared at the church, claiming that he was sent by

the North Carolina Christian Conference. At that time there were three trustees, Arch. Preddy, Alex. Brooks, and Thomas Grissom. The first two named being a majority of the trustees, sided with Rev. J. A. Alexander, and they claiming control of the building, said Alexander held services therein. Rev. John Allen and the majority of the congregation objected, but Brooks and Preddy claimed to be the legal custodians of the property. The majority of the congregation, with the Rev. John Allen, with commendable forbearance, refrained from any interference. It appears from the evidence of the plaintiff that the objecting membership, headed by the Rev. John Allen, were very largely in the majority. It appears in the evidence that from 7 to 12 members, including the two trustees, were with Alexander, and that 36 members, including one trustee, sided with Rev. John Allen. This small minority, after holding services, were dismissed, whereupon Pastor Allen and his 36 members took possession and held services, in spite of the prohibition of Alex. Brooks and Arch. Preddy. It was the regular day for church conference. The minutes show that the meeting then regularly met and reëlected John Allen pastor by 36 votes; that resolutions were also passed removing Alex. Brooks as trustee for "forbidding the members to meet in the church," and A. R. Preddy for "forcing his way into the church and removing the lock"; and thereupon the defendants John Meadows and James Bailey, named herein as defendants, were elected trustees in their place. The contest, therefore, turns upon the validity of the election of said trustees at a regular church meeting and the removal of the other two, for Thomas Grissom, the other trustee, had sided with the majority and the Rev. John Allen.

Revisal, 2670, provides that any religious body "may from time to time, and at any time, appoint in such manner as such body, society, or congregation deem proper, a suitable number of persons as trustees"; and Revisal, 2671, provides: "The body appointing shall remove such trustees or any of them." In *Thornton v. Harris,* 140 N. C., 499, it was held that under those sections any church has a right "to remove its trustees at will." The trustees of a church have no property interest as

against the governing body of the church. They are merely agents, or, as it is expressed in one of our opinions, "A church trustee is a mere *locum tenens.*" Speaking algebraically, trustees are merely x, y, and z. For legal purposes, they represent the church as to the world. But as to the *cestuis que trustent* they can be appointed at will. The statute requires no notice or cause to be shown. The discipline of the Christian denomination with which the "Rock Springs Church" is affiliated provides for ten days notice for trial of "offenses." But this applies to moral delinquencies or infractions of church discipline —in short, to trials for offenses. It could not abridge, and does not even refer to, the power given by the statutes to remove or appoint trustees at will.

The "Rock Springs Church" under the congregational polity is an independent entity, recognizing no superior in its government. Under the polity of the denomination to which it belongs the majority of the members control its government and management. The minutes of the church show that they had cause to remove Preddy and Brooks as trustees, who had taken possession of the church, because, being a majority of the trustees, they had held the building for hours for a small minority and in behalf of a minister not elected by the congregation, against the majority of the members and regularly elected pastor. Even if the congregation had not possessed the right to remove Brooks and Preddy at will, still there was no restriction in the statute, or in the church discipline, limiting the number of trustees, and the election of the two new trustees was certainly valid. These two, with Thomas Grissom, who had remained loyal to the majority, constituted a majority of the trustees, and it was error to enjoin them from controlling the property and conducting public worship.

The minutes of the church show that after the 36 members, together with their duly chosen pastor, John Allen, obtained possession of the church, upon its vacation by Rev. Alexander and the small minority, services were regularly conducted. Such services appear to have been opened by singing, not inappropriately, the hymn "When I can read my title clear." The

text discussed by the pastor, Rev. John Allen, is given as Jeremiah, chap. II, verse 24. The nature of the sermon preached on that text and its application to the occasion is not so clear.

The defendants have a majority of the trustees—three out of five—even if Preddy and Brooks were not properly removed; and they have all the trustees if they were legally removed, as we think is the case under our statute, and the judgment below must be

Reversed.