C. C. REID, W. H. PITTMAN AND FRANK TAYLOR, TRUSTEES OF THE NORTH ROCKY MOUNT BAPTIST CHURCH, AND A. J. SILBERHORN, DEACON IN THE NORTH ROCKY MOUNT BAPTIST CHURCH, v. SAMUEL H. W. JOHNSTON, PASTOR OF THE INDEPENDENT MISSIONARY BAPTIST CHURCH, FORMER PASTOR OF THE NORTH ROCKY MOUNT BAPTIST CHURCH OF ROCKY MOUNT, NORTH CAROLINA, AND G. W. STOGLIN, P. D. ENGLISH (NOW ONE OF THE TRUSTEES OF THE INDEPENDENT MISSIONARY BAPTIST CHURCH), N. J. PUCKETT, R. F. TAYLOR, JOE TALBOTT, J. L. RAMSEY, M. L. PETERSON, S. L. DUDLEY, W. N. EZZELLE, M. D. PARKER, AND H. R. CARMICHAEL (DEACON AND CHURCH TREASURER), DEACONS, MISS MARGIE TAYLOR, CHURCH CLERK, AND MRS. M. L. PETERSON, SECRETARY, ALL FORMERLY OF NORTH ROCKY MOUNT BAPTIST CHURCH AND NOW ASSOCIATED WITH THE INDEPENDENT MISSIONARY BAPTIST CHURCH, AND CITIZENS SAVINGS AND LOAN ASSOCIATION (FORMERLY CITIZENS BUILDING & LOAN ASSOCIATION), HOME SAVINGS & LOAN ASSOCIATION, AND PEOPLES BANK & TRUST COMPANY, ROCKY MOUNT, NORTH CAROLINA: P. D. ENGLISH, HOWARD WALLACE AND R. L. TREVATHAN, TRUSTEES OF THE INDEPENDENT MISSIONARY BAPTIST CHURCH.

(Filed 15 December, 1954.)

1. **Trial § 55: Appeal and Error § 40d—**

In a trial by the court by agreement, the court's findings of fact are as effective as the verdict of a jury, and are conclusive on appeal if there is competent evidence to support them. G.S. 1-184.

2. **Trial § 55—**

In a trial by the court by agreement, the court is required to find and state only the ultimate facts. G.S. 1-185.

3. **Trial § 54—**

In a trial by the court by agreement, the rules as to the admission and exclusion of evidence are not so strictly enforced as in a trial by jury, since the judge is to determine what he will consider, and his rulings are subject to review with all the information before the court; nevertheless, it would be reviewable error for the judge to admit and act upon incompetent evidence in making his findings.

4. **Constitutional Law § 19½: Religious Societies § 2—**

The courts have no jurisdiction over purely ecclesiastical controversies, Art. I, Section 26 of the Constitution of North Carolina, First Amendment to the Constitution of the United States; the courts do have jurisdiction over civil, contractual and property rights which are involved in, or arise from, a church controversy.

5. **Same—**

A Missionary Baptist Church is congregational in its church polity, and a majority of its membership, nothing else appearing, is entitled to control its church property, the Baptist Associations and Conventions being purely voluntary associations without supervision, control, or governmental power over the individual congregations.

**6. Same—**

Notwithstanding that a Missionary Baptist Church is a self-governing unit, a majority of its membership is supreme and is entitled to control its church property only so long as it remains true to the fundamental faith, usages, customs, and practices of that particular Church, as accepted by both factions before dissension; if a minority adheres to its faith, usages, customs and practices as they obtained before dissension, such minority is entitled to hold and control the entire property of the Church.

**7. Same—Part of congregation which remains true to faith, customs, usages and practices accepted by both factions prior to dissension, is entitled to control and management of church property.**

The evidence in this case to the effect that the majority of the congregation of the Missionary Baptist Church in question had ceased to participate in the general programs and activities of the Association and the Baptist Conventions, had resolved that, after ceasing its affiliation with the State and Southern Associations, the Church should continue its ministry as an independent Baptist Church, had ceased to use religious literature furnished by the Convention, had given its pastor exclusive control of the pulpit, had discharged officers and Sunday School teachers who voted against such action, etc., *is held* sufficient to support the conclusion that by such acts the majority had diverted the use of the church property to customs, doctrines and practices radically and fundamentally opposed to the characteristic usages, customs, doctrines and practices recognized and accepted by both factions of the congregation before dissension arose, and judgment that the minority, which had continued to support the usages, customs, doctrines, and practices recognized and accepted by both factions prior to the dissension, were entitled to the control and management of the property, is affirmed. The conclusion of the trial court that the true congregation is that which adheres and submits to the regular order of the Church is modified in accordance with the above.

**8. Religious Societies § 3: Costs § 4b—**

In an action against individual defendants to determine the right to the control and use of church property the cost may be taxed against the defendants individually, notwithstanding that they are described as trustees when the title is used merely as *descriptio personae.*

APPEAL by the defendants from *Paul, Special Judge,* Special December Civil Term 1953 of NASH.

Action brought by plaintiffs for possession and control of the church property of the North Rocky Mount Missionary Baptist Church, and to restrain the defendants from interfering with the use and control of said church and its properties.

Pursuant to G. S. N. C. 1-184 a jury trial was waived. After hearing the evidence and argument of counsel the judge found the facts, stated separately his conclusions of law, and entered judgment as follows: that the individual defendants have ceased to be a part of the true congregation of the North Rocky Mount Missionary Baptist Church, and are not entitled to share in the use and possession of the church property; that

the plaintiffs and all other members of said church who adhere and submit to the regular order of the church, local and general, are the true congregation, and entitled to the use and possession of the church property; that the individual defendants be, and they are hereby enjoined from interfering with the use and possession of said church property by the true congregation.

The defendants appealed assigning errors.

*Cooley & May and A. C. Bernard for Plaintiff, Appellees.*
*Hughes & Hines and Fountain, Fountain & Bridgers for Defendant, Appellants.*

PARKER, J.   The parties having expressly waived a jury trial in accordance with G. S. N. C. 1-184, the findings of fact of the trial judge are as effective as the verdict of a jury, and are conclusive on appeal, if there is competent evidence to support such findings. *Woody v. Barnett,* 239 N.C. 420, 79 S.E. 2d 789; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885; *Poole v. Gentry,* 229 N.C. 266, 49 S.E. 2d 464.

The judge is only required to find and state the ultimate facts under G. S. N. C. 1-185.   *St. George v. Hanson, supra; Woodard v. Mordecai,* 234 N.C. 463, 67 S.E. 2d 639.

The waiver of trial by jury invested the judge with the dual capacity of judge and juror.   In such cases we said in *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749, quoting from McIntosh N. C. Prac. & Proc., p. 553: "The rules as to the admission and exclusion of evidence are not so strictly enforced as in a jury trial, since the judge is to determine what he will consider, and his rulings are subject to review on appeal, with all the information before the court." However, it would be reviewable error for the judge, exercising at the same time his own and the functions of a jury, to admit and act upon incompetent evidence in finding facts. *Puffer & Sons Mfg. Co. v. Baker,* 104 N.C. 148, 10 S.E. 254.

This question is presented for decision upon the Record before us: Have the defendants, and those united with them, as against a faithful minority, diverted the property of the North Rocky Mount Missionary Baptist Church to the support of usages, customs, doctrines and practices radically and fundamentally opposed to the characteristic usages, customs, doctrines and practices recognized and accepted by both factions of the congregation of this particular church before the dissension between them arose?

Let it clearly be understood at the outset that we are not adjudicating the right of any person to a religious belief or practice.   Art. I, Sec. 26, of the North Carolina Constitution, guarantees that "all persons have a

natural and inalienable right to worship Almighty God according to the dictates of their own consciences, and no human authority should, in any case whatever, control or interfere with the rights of conscience." The First Amendment to the Constitution of the United States provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."

The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, for there is a constitutional guarantee of freedom of religious profession and worship, as well as an equally firmly established separation of church and state, but the courts do have jurisdiction, as to civil, contract and property rights which are involved in, or arise from, a church controversy. *Clapp v. Krug,* (Ky.), 22 S.W. 2d 1025; *Stallings v. Finney,* 287 Ill. 145, 122 N.E. 369; Anno. 8 A.L.R., p. 105 *et seq.;* Anno. 70 A.L.R., p. 75 *et seq.;* 45 Am. Jur., Religious Societies, Sec. 40; 76 C.J.S., Religious Societies, Sec. 86; Anno. 20 A.L.R. 2d p. 451. This principle may be tersely expressed by saying religious societies have double aspects, the one spiritual, with which legal courts have no concern, and the other temporal, which is subject to judicial control.

The North Rocky Mount Missionary Baptist Church is congregational in its church polity, is a self-governing unit, and a majority of its membership, nothing else appearing, is entitled to control its church property. *Dix v. Pruitt,* 194 N.C. 64, 138 S.E. 412; *Windley v. McCliney,* 161 N.C. 318, 77 S.E. 226; *Williams v. Jones,* (Ala.) 61 So. 2d 101; Anno. 20 A.L.R. 2d pp. 432-3; 45 Am. Jur., Religious Societies, Sec. 55; 76 C.J.S., p. 853.

This church affiliated with the Roanoke Baptist Association, the North Carolina State Baptist Convention and the Southern Baptist Convention. Such associations are purely voluntary associations for the purpose of joining their efforts for missions and similar work, but have no supervision, control or governmental power over the individual congregations, which are absolutely independent of each other. *Conference v. Allen,* 156 N.C. 524, 72 S.E. 617.

While it is true the membership of the North Rocky Mount Missionary Baptist Church is a self-governing unit, a majority of its membership is supreme and is entitled to control its church property only so long as the majority remains true to the fundamental faith, usages, customs, and practices of this particular church, as accepted by both factions before the dispute arose. *Western North Carolina Conference v. Tally,* 229 N.C. 1, 47 S.E. 2d 467; *Wheeless v. Barrett,* 229 N.C. 282, 49 S.E. 2d 629; *Dix v. Pruitt, supra; Kerr v. Hicks,* 154 N.C. 265, 70 S.E. 468; G.S. 61-2 and G.S. 61-3; 45 Am. Jur., Religious Societies, Sec. 55; 76 C.J.S., Religious Societies, pp. 853-4; Anno. 8 A.L.R. 113; 70 A.L.R. 83.

A majority of the membership of the North Rocky Mount Missionary Baptist Church may not, as against a faithful minority, divert the property of that church to another denomination, or to the support of doctrines, usages, customs and practices radically and fundamentally opposed to the characteristic doctrines, usages, customs and practices of that particular church, recognized and accepted by both factions before the dissension, for in such an event the real identity of the church is no longer lodged with the majority group, but resides with the minority adhering to its fundamental faith, usages, customs and practices, before the dissension, who, though small in numbers, are entitled to hold and control the entire property of the church. *Wheeless v. Barrett, supra; Dix v. Pruitt, supra; Kerr v. Hicks, supra; Highland View Baptist Church v. Walker,* (Ala.) 66 So. 2d 122; *Mt. Olive Primitive Baptist Church v. Patrick,* 252 Ala. 672, 42 So. 2d 617, 20 A.L.R. 2d 417; *Mitchell v. Church of Christ,* 221 Ala. 315, 318, 128 So. 781, 783, 70 A.L.R. 71; *Baptist City Mission Soc. v. People's Tabernacle Cong. Church,* 64 Colo. 574, 174 P. 1118, 8 A.L.R. 102; *Smith v. Pedigo,* 145 Ind. 361, 33 N.E. 777, 19 L.R.A. 433; *Same Case,* 44 N.E. 363, 32 L.R.A. 838; *Park v. Champlin,* 96 Iowa 55, 64 N.W. 674, 31 L.R.A. 141; *Franke v. Mann,* 106 Wis. 118, 81 N.W. 1014, 48 L.R.A. 856; *Hughes v. Grossman,* 166 Kan. 325, 201 P. 2d 670; 45 Am. Jur., Religious Societies, Secs. 55 and 67; 76 C.J.S., Religious Societies, pp. 853-4; Anno. 8 A.L.R. p. 113; Anno. 70 A.L.R. p. 83.

This Court said in *Wheeless v. Barrett, supra:* ". . . the title to the land in question was taken in the name of the officers and trustees of, and in trust for the City Mission of Rocky Mount, North Carolina, a nondenominational religious organization, and as so taken, shall be and remain forever for the use and occupancy of that organization for which it was so purchased, and the estate therein shall be deemed and held to be absolutely vested, as between the parties thereto, in the trustees of such organization for use according to the intent expressed in the conveyance. And while the deed is not shown in the record on this appeal, it may be assumed that, being made to the officers and trustees of the City Mission of Rocky Mount, North Carolina, it conveyed the land in trust for the purposes for which the organization was formed. Therefore, the attempt to divert the property to use and occupancy by a church under special charter, and later by a denominational church was without authority in law."

We said in *Dix v. Pruitt, supra:* ". . . a majority in a Baptist church is supreme, or a 'law unto itself,' so long as it remains a Baptist church, or true to the fundamental usages, customs, doctrine, practice, and organization of Baptists. For instance, if a majority of a Baptist church should attempt to combine with a Methodist or Presbyterian church, or in any

manner depart from the fundamental faiths, usages and customs which are distinctively Baptist, and which mark out that denomination as a separate entity from all others, then, in such case, the majority could not take the church property with them for the reason that they would not be acting in accordance with distinctively Baptist principles."

The Supreme Court of Alabama in *Skyline Missionary Baptist Church v. Davis,* (Ala.) 17 So. 2d 533, said: "It is familiar law that where factional differences occur in an ecclesiastical body, the rule of the civil courts in dealing with the property rights disputed between the factions is to give effect to the will of that part of the organization acting in harmony with the ecclesiastical laws, usages, customs and principles which were accepted among them before the dispute arose."

. The defendants in their brief cite and rely upon *Watson v. Jones,* 80 U.S. 679, 20 L. Ed. 666. In Anno. 8 A.L.R. p. 112, it is said: "While the principles above quoted from the *Watson Case* undoubtedly furnish the general rules for the guidance of the civil courts in the determination of questions in relation to civil or property rights arising out of schisms or divisions within independent or congregational societies when no express trust is involved, they appear, when viewed in the light of actual decisions, to have been stated too broadly and without proper qualification, in that they do not make proper allowance for the possibility that the action of the majority—assuming that by the law of the society the majority rule prevails—may involve so wide a departure from the fundamental and characteristic beliefs or polity of the society that to give it effect as to property rights would involve a perversion of the property from the implied trust to which it is subject, and because they fail to recognize that in such case the real identity of the society is no longer lodged with the majority faction, but resides with the minority faction, which remains faithful to the fundamental and distinctive beliefs and polity of the society."

The facts found by the Judge and conclusions of law stated which are material for decision of this case are as follows:

## FINDINGS OF FACT.

The North Rocky Mount Baptist Church was organized in 1894 as a Missionary Baptist Church. In 1895 it became affiliated with the Tar River Baptist Association, and shortly thereafter with the North Carolina State Baptist Convention and the Southern Baptist Convention, and continued such affiliations until 9 August 1953, with the exception that in 1908 the Roanoke Baptist Association was formed from a part of the area in the Tar River Baptist Association and its affiliation since 1908 has been with the Roanoke Baptist Association. During that time it sent

messengers to the meetings of these bodies, who participated in their deliberations and decisions, and its pastors attended the pastors' conferences of these associations, and participated in their deliberations and decisions, it contributed to and participated in the programs, including the co-operative program, and it used the Sunday School and Religious Literature prepared and approved by the Southern Baptist Sunday School Board, an affiliate of the Southern Baptist Convention. All this was stopped on 9 August 1953 during the pastorate of the Rev. Samuel H. W. Johnston, one of the defendants, except direct support of the Baptist Orphanage. Rev. Johnston testified we are contributing to foreign missions, though the court did not find it as a fact.

On 5 October 1894 W. C. Trevathan and wife conveyed by deed to certain named trustees and their successors ¼ of an acre of land, upon which is situate the church building of the North Rocky Mount Missionary Baptist Church, upon this special trust that the trustees shall hold and possess said land for the especial use and behoof and benefit of the Missionary Baptist Church (white) of Rocky Mount and none other. This property now has a fair value of about $250,000.00. On 18 November 1949 there was conveyed to the trustees of this church, which trustees together with A. J. Silberhorn are the plaintiffs herein, a lot of land on which is located the church parsonage. On 9 August 1953 the church owned money deposited in a local bank, and investments in a local building and loan society. The real and personal property of said church had a fair value of from $250,000.00 to $300,000.00 on 9 August 1953.

From 1894 to 1916 the North Carolina State Baptist Convention contributed funds to help pay the salary of the pastor of this church.

The above three paragraphs of findings of fact are based upon stipulations entered into by the parties at a Pre-Trial Conference, except the finding "direct support of the Baptist Orphanage," and the words "which trustees together with A. J. Silberhorn are the plaintiffs herein." As to these there is ample competent evidence to support them.

Rev. Samuel H. W. Johnston, one of the defendants, is an ordained Baptist preacher. He was formerly pastor of the Woodlawn Baptist Church in Pawtuckett, R. I., a church affiliated with the Northern Baptist Convention. After a short pastorate he differed with the doctrines, customs and practices of this church and of the Northern Baptist Convention, and instituted a movement to have this church withdraw its affiliation with that Convention and to change its customs and practices. He was unsuccessful, and resigned as pastor. With 43 members of this church he established the Emanuel Baptist Church of Pawtuckett, which affiliated with the General Association of Regular Baptist Churches. He subsequently served as pastor of Park Avenue Baptist Church in Binghampton, N. Y., a church affiliated with the General Association of Regu-

lar Baptist Churches. He also served as instructor in a seminary largely supported by the General Association of Regular Baptist Churches. He approves of the doctrines, customs and practices of the General Association of Regular Baptist Churches, and refuses to adhere to the teachings, practices and customs of the Northern Baptist Convention, the Southern Baptist Convention, the North Carolina State Baptist Convention or the Roanoke Baptist Association.

In February 1952 the North Rocky Mount Missionary Baptist Church elected Rev. Samuel H. W. Johnston as its pastor. Prior to his election he assured the church's officers it was not his purpose to have the church withdraw from the Southern Baptist Convention. Some months later there were discussions between Johnston and his Board of Deacons as to the use of Southern Baptist Convention literature in the Sunday School or the use of such literature prepared and published by the General Association of Regular Baptist Churches, as to the co-operative and other programs of the Southern Baptist Convention, as to the use by many leaders in the Southern Baptist Convention of the Revised Standard Version of the Bible, and as to the teaching permitted in the seminaries and schools of the Southern Baptist Convention. That for several months until a few days before 9 August 1953 conversations were had as to the withdrawal of the North Rocky Mount Missionary Baptist Church from the Southern Baptist Convention.

About 1 April 1953 Rev. Samuel H. W. Johnston disclosed his plan that when he got his business lined up he was going to have the North Rocky Mount Missionary Baptist Church withdraw from the Southern Baptist Convention, and that he would then run the church like he wanted to run it. That if the church did not vote to withdraw from the Southern Baptist Convention, he would resign as its pastor. That on or about 1 August 1953 G. W. Stoglin, one of the defendants, told David Lewis, a member of the church, that the plans were to form an Independent Baptist Church from the North Rocky Mount Missionary Baptist Church, and then to affiliate with the General Association of Regular Baptist Churches.

At the 11:00 a.m. service on Sunday, 9 August 1953, of this church Rev. Johnston presented to the congregation the Resolution set forth below:

"Whereas, the Southern Baptist Convention tolerates and accepts liberalism and unbelief and apostasy in some of its seminaries and schools, and

"Whereas, many of the leaders of this convention are promoting the sale and use of the Revised Standard Version and the Interpreter's Bible, and

REID *v.* JOHNSTON.

"Whereas, the Co-operative Program forces a participating Baptist to support these schools, these leaders and their programs whether he wants to or not, and

"Whereas, the undemocratic methods of the convention prevent us from bringing about a reform from within, and

"Whereas, the North Rocky Mount Baptist Church accepts the Bible and opposes modernism which denies its trustworthiness and is an enemy of the Christian faith, therefore

"Be It Resolved, that the North Rocky Mount Baptist Church immediately withdraw from further participation in the convention program and its organization, until such time as the convention deals with and rectifies these evils.

"Be It Further Resolved, that a copy of this resolution be sent to the Southern Baptist Convention Headquarters and also to the North Carolina State Baptist Convention.

"Be It Further Resolved, that after withdrawal the North Rocky Mount Baptist Church continue its ministry in this community as an Independent Missionary Baptist Church."

Of the congregation present, 241 voted in favor of the Resolution, 144 against it, and about 200 abstained from voting. The defendants, and those united in interest with them, proposed, voted for, accepted, and approved the Resolution. The findings of fact in this paragraph are based upon stipulations entered into by the parties at a Pre-Trial Conference.

The General Association of Regular Baptist Churches is a separate and distinct organization, not associated or affiliated with the Northern or Southern Baptist Conventions, the North Carolina State Baptist Convention, or the Roanoke Baptist Association. Its headquarters are in Chicago, Ill., and it has 657 churches affiliated with it, only two of which are in the Southern states. It has its own publishing houses for the issuance and distribution of religious literature, supports and contributes to missionary work through mission boards approved by it, and supports five religious schools. It holds annual conventions, and has an active committee or council to carry out its purposes and aims. This association and its affiliated churches constitute a separate and distinct denominational organization within themselves, conducting and supporting activities, programs, institutions and practices distinctive to it, and to those who adhere to its order and doctrines.

On 9 August 1953, and subsequent thereto, the defendants, and those united in interest with them, have caused the North Rocky Mount Missionary Baptist Church to take the following action:

1. Withdraw from the Roanoke Baptist Association, the North Carolina State Baptist Convention and the Southern Baptist Convention, and

REID v. JOHNSTON.

from their programs and activities, except support of the Baptist Orphanage.

2. Stop using the Sunday School and Religious Literature of the Southern Baptist Convention, and begin using the Sunday School and Religious Literature of the General Association of Regular Baptist Churches.

3. Withdraw its support from the missionaries and mission program of the State and Southern Baptist Convention, the support of which it had practiced for many years, and on at least one occasion gave its support to a mission of or approved by the General Association of Regular Baptist Churches, the first time as far as the evidence discloses such practice had been followed by the church.

4. Withdraw its support from the Baptist Schools and Seminaries, the support of which it had practiced for many years.

5. Discharge several of its church officers and Sunday School teachers for the reason that they had opposed and voted against the resolution on August 9, 1953, and "because they are not in harmony with the stand the church has taken."

6. The Board of Deacons has approved and agreed that the pastor shall have the exclusive control of the pulpit, with the power to say who shall and who shall not occupy the same, such an understanding being a departure from the custom and practice of the local church itself as well as Missionary Baptist Churches generally.

The defendants, and those united in interest with them, are in possession of all the property of the church, and that they have repudiated, and departed the doctrines, customs, practices and usages of the North Rocky Mount Missionary Baptist Church, as the same existed prior to 9 August 1953.

The plaintiffs have not repudiated or departed the doctrines, customs, practices and usages of the North Rocky Mount Missionary Baptist Church, as the same existed prior to 9 August 1953.

The use and possession of the church lot and building by the defendants for the purposes and in the manner in which it is now being used and possessed constitutes a breach of the trust imposed by the terms of the deed from Trevathan and wife to the trustees of the church.

That the real and personal property of this church belongs to, and should be awarded to, the plaintiffs who constitute a part of the true congregation: that the individual defendants have ceased to be a part of the true congregation of this church.

### CONCLUSIONS OF LAW.

Property rights being involved, the Court has jurisdiction to hear and determine such rights.

That in the North Rocky Mount Missionary Baptist Church the church property belongs to the true congregation, who are entitled to its possession.

That the true congregation in church organizations is those who adhere and submit to the regular order of the church, local and general, whether a majority or minority of membership.

That the individual defendants in this action have departed from the fundamental usages, customs, doctrine, practice and organization of the North Rocky Mount Missionary Baptist Church and of the denomination, and that said defendants refuse to adhere and submit to the regular order of the church, and are, therefore, not a part of the true congregation of said church.

That the plaintiffs have remained true to the fundamental usages, customs, doctrine, practice and organization of the North Rocky Mount Missionary Baptist Church and of the denomination, and that they do adhere and submit to the regular order of the church, and that they are, therefore, a part of the true congregation.

That the defendants should be enjoined and restrained from interference with the use and possession of the church property by the true congregation.

It is apparent that the Trial Judge has designated certain matters as Findings of Fact, which should be designated Conclusions of Law.

The findings of fact stated above are supported by adequate competent evidence.

The Rev. Samuel H. W. Johnston testifying with respect to the practices, customs, doctrine and usages of Southern Baptists said, p. 411 of the Record: "If what we have seen is significant of what Southern Baptists stand for, I don't want any part of it. I'll never quit preaching the truth. I will fight this till the day I die. I will denounce evil wherever I find it, and the Baptist organization in the South is rotten to the core."

Dr. R. T. Ketcham, a national representative of the General Association of Regular Baptist Churches and editor of their official organ, testified as a witness for the defendants that his association holds to the view of premillennialism, that the millennial question has been made a test of fellowship by virtue of the fact that his association puts a premillennial interpretation on Art. 17 of the Baptist Faith and Message, and that a post millennial church has never applied for fellowship in his association.

The Conclusion of Law made in this case: "That the true congregation in church organizations is those who adhere and submit to the regular order of the church, local and general, whether a majority or minority of membership" is not a correct statement of the law, under the pleadings and facts before us.

In *Dix v. Pruitt, supra,* it was alleged in the complaint, and admitted in the answer, that the Dan River Primitive Baptist Church has at all times been conducted and governed by the rules, customs and usages which control Primitive Baptist Churches. *Brogden, J.,* speaking for the Court said: "Our case was not tried upon the theory that the association has any power to impose its will upon the local church, or to determine which faction constitutes the true church. The question with us is whether or not the independent sovereignty of the local church is limited by adherence to the principle of order, doctrine, and practice as handed down through generations of Primitive Baptist church life. Upon the record, there was sufficient evidence of such limitation to be submitted to the jury, and the jury has returned its verdict into court in accordance with law. Whether this record properly presents or reflects the proper and established church polity of Primitive Baptists, we know not."

In the instant case there is no allegation in the complaint that the North Rocky Mount Missionary Baptist Church has been at all times governed and conducted by the rules, customs and practices of Missionary Baptist Churches in general, nor have the defendants made any such admission. The Record before us discloses that the North Rocky Mount Missionary Baptist Church from the beginning has been a pure democracy and independent of any external control. It is known to all that from the beginning Baptist Churches have retained, and refused to give up their independence.

The proper conclusion of law in this case is that the true congregation of the North Rocky Mount Missionary Baptist Church consists of those members of its congregation who adhere to the characteristic doctrines, usages, customs and practices of that particular church, recognized and accepted by both factions before the dissension between them arose.

The Trial Judge made elaborate findings of fact as to the organizational and operational structure of Missionary Baptist Churches generally in this State and nation. All of these findings of fact are irrelevant and immaterial. The question for decision before the Trial Court was the same as that presented to us for decision, which question we have stated heretofore in this opinion.

The defendants contend in their brief that "an examination of this Record discloses that the only difference that exists between the plaintiffs and defendants in this action is continued cooperation and affiliation with the State and Southern Baptist Conventions." The defendants, therefore, contend that the rule that the majority of an independent or congregational society may not divert the property from the denomination to which the society belongs, or from the fundamental doctrines and tenets to which it originally subscribed, does not prevent such a majority, over the objection of a minority, from severing a voluntary ecclesiastical con-

nection of the society from another body. 45 Am. Jur., Religious Societies, p. 766; Anno. 8 A.L.R. 123; Anno. 70 A.L.R. 86; *Organ Meeting House v. Seaford,* 16 N.C. 453. In the *Organ Meeting House Case* the bill charged a part of the members composing the Lutheran Church adopted a general synod, a form of church government previously unknown to the Lutheran Church. In our opinion, as we view the evidence in the Record, far more serious differences exist.

The defendants, and those united in interest with them, have done the following things:

*One.* They have ceased to participate in the general programs and activities of the Roanoke Baptist Association, the North Carolina State Baptist Convention and the Southern Baptist Convention, and have withdrawn their financial support of these agencies and institutions in their Co-operative Program, except support of the Baptist Orphanage, contrary to what the North Rocky Mount Missionary Baptist Church did before the dissension in the congregation began.

*Two.* They have resolved that the North Rocky Mount Missionary Baptist Church, after such cessation of affiliation with the local, State and Southern associations, shall continue its ministry in the community as an Independent Baptist Church.

*Three.* They have stopped the use of Sunday School and Religious Literature prepared and approved by the Southern Baptist Convention, and are using Sunday School and Religious Literature prepared and published by the General Association of Regular Baptist Churches, an association, which, according to the testimony of Dr. R. T. Ketcham, its national representative and editor of its official organ, holds to the view of premillennialism, and that the millennial question has been made a test of fellowship. This is contrary to what the North Rocky Mount Missionary Baptist Church did before the dispute in the congregation arose.

*Four.* The Board of Deacons have approved and agreed that the Rev. Samuel H. W. Johnston shall have exclusive control of the pulpit, with power to say who shall, and who shall not, occupy the same, contrary to the custom and practice of this particular church before the dissension began.

*Five.* They have discharged several of the North Rocky Mount Missionary Baptist Church officers and Sunday School teachers for the reason they opposed and voted against the Resolution adopted on 9 August 1953 by an affirmative vote of 241 members against a negative vote of 144, with 200 abstaining from voting, out of an enrolled membership of approximately 1,300 persons.

*Six.* The Rev. Samuel H. W. Johnston has done all he could to separate himself as far as possible from the programs of the North Carolina

State Baptist Convention and the Southern Baptist Convention, until such time as certain things he called "evils" are rectified.

The plaintiffs, and those united in interest with them, have done these things:

*One.* Have since 9 August 1953 regularly conducted meetings elsewhere than in the North Rocky Mount Baptist Church, with an ordained minister in the pulpit.

*Two.* Have continued to use the Sunday School and Religious Literature prepared and published by the Southern Baptist Convention.

*Three.* Have continued to participate in, cooperate with, and support the programs and activities of the Roanoke Baptist Association, the North Carolina Baptist Convention and the Southern Baptist Convention.

*Four.* Have circumspectly and carefully done exactly what the membership of the North Rocky Mount Missionary Baptist Church did before the dispute between the factions arose.

The defendants, and those united in interest with them, by resolving that the North Rocky Mount Missionary Baptist Church shall continue its ministry in the community as an Independent Missionary Baptist Church, and by doing the things found as facts by the Trial Judge, as set forth in this opinion, and by being in possession of and using the church property for those purposes and plans have, as against the plaintiffs, and those united in interest with them, who are a faithful minority, diverted the property of the North Rocky Mount Missionary Baptist Church to the support of usages, customs, doctrines and practices radically and fundamentally opposed to the characteristic usages, customs, doctrines and practices recognized and accepted by both factions of the congregation of this particular church before the dissension between them arose.

The defendants contend that the court erred in taxing the costs against the individual defendants, for the reason that the defendants individually are not parties to the action. The court's ruling seems to be correct for it would appear that these parties are sued as individuals, and the title of the positions they hold are merely *descriptio personae.*

The evidence in the Record discloses that the Rev. Samuel H. W. Johnston was the person, who inspired and led the movement, which caused the dissension in the North Rocky Mount Missionary Baptist Church. The evidence clearly shows the purpose of this movement. David Braswell, a member of this church, testified as a witness for the plaintiffs (R., p. 196): "At the last of March or the first of April Mr. Johnston was around at my house. We were discussing the church situation in general, and he made the remark that when he got his business lined up, he was going to pull the church out of the Convention, and run it like he wanted to run it." A. J. Silberhorn, a witness for the plaintiffs and a member of this church testified (R., p. 154): "At a Deacons' meeting a

week or two before the actual voting of the withdrawal from the Southern Baptist Convention one of the Deacons asked this question of the Pastor, and I believe I can quote it in his words. He says, 'Pastor, what are we going to do after we withdraw from the Southern Baptist Convention? Don't you think we ought to have something prepared in which to present to the people?' and the Pastor answered, 'Yes, I plan that as soon as the voting is over, that I announce to the congregation that we apply for fellowship in the General Assembly of Regular Baptist Churches.'" David Lewis, a member of the church, testified as a witness for the plaintiffs that G. W. Stoglin, one of the defendants, told him prior to the meeting of 9 August 1953 (R., p. 168) : "That their plans were to withdraw from the Southern Baptist Convention and State Baptist Convention, and form a new Independent Baptist Church and affiliate themselves with the General Association of Regular Baptists."

We have carefully examined and considered all the defendants' assignments of error, including the authorities cited in their brief, and the defendants have not shown prejudicial error sufficient to justify another trial of this long and bitterly contested case. The heat of conflict is over, and the time has come in the Rocky Mount Missionary Baptist Church for the exercise of the Christian graces of reconciliation, forbearance, brotherly love and unity, according to the admonition given by the Apostle Paul to the Church at Corinth.

The lower court ordered, adjudged and decreed: "That the plaintiffs and all other members of said church who adhere and submit to the regular order of the church, local and general, are the true congregation." That part of the judgment will be modified to read as follows: "That the true congregation of the North Rocky Mount Missionary Baptist Church consists of the plaintiffs and all other members of the congregation who adhere and submit to the characteristic doctrines, usages, customs and practices of this particular church, recognized and accepted by both factions of the congregation before the dissension between them arose."

We conclude that the court's findings of fact were supported by competent evidence, and that they are sufficient to sustain the judgment, as herein modified, based thereon. *Woody v. Barnett, supra.*

Judgment modified and affirmed.