R. E. ATKINS, TRUSTEE OF LITTLE MOUNTAIN BAPTIST CHURCH, AND GLADYS CUMMINGS, MAJOR F. CUMMINGS, LARRY ATKINS, ROBIN ATKINS, JOAN ATKINS, GARRY ATKINS, PAULINE ATKINS, MOIR ATKINS, DWIGHT ATKINS, BARBARA HICKS, RICKY HICKS, HERMAN HICKS, ETHEL ATKINS, MAYE ATKINS, MICIE WATSON, LEOLA KEY, KATHY KEY, POSEY SAWYERS, MAMIE SAWYERS, MYRTLE KEY, PAUL KEY, ALMA C. JOHNSON, BOBBY JOHNSON, GERTRUDE JOHNSON, TOMMY JOHNSON AND J. C. JOHNSON v. C. L. WALKER, RAYTON PUCKETT, HARVEY JOHNSON, LONNIE JOHNSON, BOBBY BRUNER, ELBERT WATSON, GRAHAM TILLEY, FRANK HOLIFIELD, CLAY GIBSON, WORTH BASS, MABLE CREED, ROSCOE CREED, FRANKIE LAWSON, CLYDE LAWSON, DAVID BUSSICK AND FRANCES VENABLE

No. 7317SC14

(Filed 1 August 1973)

1. Appeal and Error § 12; Rules of Civil Procedure § 41— motion to dismiss for failure to pay court costs — made for first time on appeal

Defendants' motion to dismiss under Rule 41(d) for failure of plaintiffs to pay court costs in an earlier action in which they took a voluntary dismissal without prejudice comes too late when made for the first time on appeal.

2. Appeal and Error § 26— appeal itself as exception to judgment and matters on face of record

Plaintiffs' motion to dismiss defendants' appeal for failure of defendants to set forth assignments of error in the record as required by Rules of the Court of Appeals is denied since the appeal itself is an exception to the judgment and to any matter appearing on the face of the record proper.

3. Constitutional Law § 22; Religious Societies and Corporations § 3— church disputes — jurisdiction of State courts

The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and con-

troversies, for there is a constitutional guarantee of freedom of religious profession and worship, as well as an equally firmly established separation of church and state, but the courts do have jurisdiction, as to civil, contract and property rights which are involved in, or arise from, a church controversy.

4. **Constitutional Law § 22; Religious Societies and Corporations § 3—church property dispute — jurisdiction of State courts**

The U. S. Supreme Court has held that by virtue of the Fourteenth Amendment the First Amendment guarantee of religious liberty precludes the intrusion into ecclesiastical matters by the states, either in their legislative or judicial capacities; specifically, a state court, in deciding a church property dispute, may not base its decision upon the interpretation and significance that the court assigns to aspects of church doctrine.

5. **Constitutional Law § 22; Religious Societies and Corporations § 3—church property dispute — departure-from-doctrine issues considered — error**

Since courts must decide church property disputes without inquiring into underlying controversies over religious doctrines and without in any way basing decision upon any determination made upon such an inquiry, the trial court in this action to determine the right to possession and control of church property erred in submitting to the jury issues as to departure-from-doctrine by one group or the other and in entering judgment for plaintiffs based on the jury's verdict that plaintiffs had remained faithful to and defendants had radically and fundamentally departed from the doctrines and practices of the church prior to its division.

Judge BRITT dissents.

APPEAL by defendants from *Crissman, Judge,* 29 May 1972 Session of Superior Court held in SURRY County.

This civil action was instituted on 15 March 1971 to determine the right to possession and control of the parsonage, sanctuary and buildings of The Little Mountain Baptist Church in Surry County and to enjoin the defendant Walker from continuing to act as pastor thereof. The action arises out of a schism among the church members. Plaintiffs in substance alleged: That The Little Mountain Baptist Church is a Missionary Baptist Church which is affiliated with the Surry Baptist Association and which has existed for many years; that since its organization it has been a congregational church governed by the vote of its members; that plaintiffs and other members of long standing in the church, who in fact constitute a majority of the members, still hold to "the fundamental faiths, usages, customs and practices of the church" which were held by all members prior to the schism; that the defendants, who are now in con-

Atkins v. Walker

trol of the church property, "have departed radically and fundamentally from the characteristic usages, customs, doctrines and practices of The Little Mountain Baptist Church accepted by all members prior to the division" by, among other things, "teaching and imposing doctrines, customs, practices and usages contrary to those characteristic of the whole church prior to the division." Plaintiffs prayed that they and those whom they represent "be declared the true congregation of The Little Mountain Baptist Church," that defendants be required to surrender the church buildings to the plaintiffs, and that the defendant Walker be restrained from continuing to act as pastor.

Defendants moved to dismiss the action for lack of jurisdiction over the subject matter in that the action involved "only an interpretation of ecclesiastical matters over which the court has no jurisdiction," "the legal tribunals of North Carolina have no right to hire or fire a preacher," and the action "is in violation of Article One, Section 13 of the North Carolina Constitution and the First Amendment to the United States Constitution." This motion was overruled.

Defendants then filed answer in which they denied the material allegations of the complaint and alleged that "the plaintiffs have not remained true to the faith of The Little Mountain Baptist Church," but "became at odds with the pastor" and have abandoned the church, and that "no doctrines, customs, practices and usages have been changed since the formation of the church." In their answer defendants again moved that the action be dismissed on the grounds that it involved purely ecclesiastical matters over which the court had no jurisdiction and that it was contrary to the Federal and State Constitutions.

Following trial at which both plaintiffs and defendants presented testimony of a large number of witnesses, issues were presented to the jury and answered as follows:

"1. Did the Plaintiffs remain faithful to the doctrines and practices of the Little Mountain Baptist Church recognized and accepted by the Plaintiffs and Defendants prior to the division?

"ANSWER: Yes.

"2. Have the Defendants departed radically and fundamentally from the characteristic usages, customs, doctrines and practices of The Little Mountain Baptist Church ac-

cepted by all members prior to the division as alleged in the Complaint?

"ANSWER: Yes."

Judgment was entered on the verdict adjudging that plaintiffs have remained faithful to and defendants have radically and fundamentally departed from the doctrines and practices of the church accepted by all members prior to the division and that "the true congregation of the Little Mountain Baptist Church consists of the plaintiff (sic) and all other members of the congregation who adhere to and submit to the characteristic doctrines, usages, customs and practices of the Little Mountain Baptist Church recognized and accepted by both factions of the congregation before the dissention between them arose." The judgment ordered defendants "to forthwith vacate and surrender to the plaintiffs" the church building and property, and restrained the defendant Walker from acting as pastor of the church.

From this judgment, defendants appealed.

*White & Crumpler by James G. White and Michael J. Lewis for plaintiff appellees.*

*Seawell, Pollock, Fullenwider, Van Camp & Robbins by H. F. Seawell, Jr., for defendant appellants.*

PARKER, Judge.

[1]   After the record on appeal in this case was docketed in this Court, defendants filed a motion in this Court to dismiss plaintiffs' action under Rule 41 (d) of the Rules of Civil Procedure on the grounds that at the time this action was commenced on 15 March 1971 the costs had not been paid in a prior action in which judgment of voluntary dismissal without prejudice had been entered on 18 February 1971. The record does not disclose that this question was raised in the trial court at any time by motion or otherwise. Defendants' motion, made for the first time in this Court, comes too late and is denied.

[2]   Plaintiffs also filed a motion in this Court, their motion being to dismiss defendants' appeal on the grounds that appellants' assignments of error as set forth in the record on appeal do not comply with requirements of the Rules of this Court. This motion is also denied. The appeal is itself an excep-

tion to the judgment and to any matter appearing on the face of the record proper, Strong, N. C. Index 2d, Appeal and Error, § 26, and, as hereinafter noted, our decision on this appeal is rendered upon matters thus appearing. Accordingly, we now consider the substantial constitutional question presented by the appeal in this case.

[3] "The legal or temporal tribunals of the State have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, for there is a constitutional guarantee of freedom of religious profession and worship, as well as an equally firmly established separation of church and state, but the courts do have jurisdiction, as to civil, contract and property rights which are involved in, or arise from, a church controversy." *Reid v. Johnston,* 241 N.C. 201, 85 S.E. 2d 114. As that case illustrates, in resolving conflicts as to property rights over which the courts do have jurisdiction, particularly in cases such as the present one involving a controversy as to property rights between two factions of an independent or congregational church, the courts of this and of other states have on occasion felt it necessary and have recognized the judicial power to inquire into and to make determination as to whether one group or the other had departed radically and fundamentally from the characteristic usages, customs, doctrines and practices which prevailed within the church before the controversy arose. See: Annotation, 15 A.L.R. 3d 297. However, the view that civil courts may properly enter upon such an inquiry has not been universally accepted as correct. More than one hundred years ago Justice Miller of the United States Supreme Court expressed a contrary view. In a dictum statement in *Watson v. Jones,* 80 U.S. 679, 20 L.Ed. 666, he said:

> "The second class of cases which we have described has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.
>
> "In such cases, where there is a schism which leads to a separation into distinct and conflicting bodies, the rights

of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation. *This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization;* for, if such was permitted, a very small minority, without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respect their views of religious truth." (Emphasis added.)

*Watson v. Jones, supra,* was a pre-*Erie R. Co. v. Tompkins* diversity decision reflecting federal general law and was decided before the First Amendment was made applicable to the States. Referring to the above-quoted portion of the opinion in the *Watson* case, and quoting from an Annotation in 8 A.L.R. at p. 112, the opinion in *Reid v. Johnston, supra,* expressed the view that the principles set forth in *Watson* appear " 'to have been stated too broadly and without proper qualification, in that they do not make proper allowance for the possibility that the action of the majority—assuming that by the law of the society the majority rule prevails—may involve so wide a departure from the fundamental and characteristic beliefs or polity of the society that to give it effect as to property rights would involve a perversion of the property from the implied trust to which it is subject, and because they fail to recognize that in such case the real identity of the society is no longer lodged with the majority faction, but resides with the minority faction, which re-

mains faithful to the fundamental and distinctive beliefs and polity of the society.' "

[4] In the years since *Watson* was decided, the United States Supreme Court has held that by virtue of the Fourteenth Amendment the First Amendment guarantee of religious liberty precludes the intrusion into ecclesiastical matters by the states, either in their legislative or judicial capacities. *Cantwell v. Connecticut,* 310 U.S. 296, 84 L.Ed. 1213, 60 S.Ct. 900, 128 A.L.R. 1352 (1940); *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 97 L.Ed. 120, 73 S.Ct. 143 (1952); *Kreshik v. St. Nicholas Cathedral,* 363 U.S. 190, 4 L.Ed. 2d 1140, 80 S.Ct. 1037 (1960). More recently, in *Presbyterian Church v. Hull Church,* 393 U.S. 440, 21 L.Ed. 2d 658, 89 S.Ct. 601 (1969), the United States Supreme Court dealt again with the question of whether a state civil court, in deciding a church property dispute, may base its decision upon the interpretation and significance that the civil court assigns to aspects of church doctrine. The Supreme Court held that the First Amendment, as applied to the states by the Fourteenth Amendment, prohibits decision upon such a basis.

In that case, two local Georgia churches, after voting to withdraw from the general church because of its alleged departure from original fundamental faiths and practices, sued in the Georgia state courts to enjoin the general church from trespassing on their property. Georgia law implied a trust upon local church property for the benefit of the general church, conditioned upon the general church's adherence to its tenets of faith and practice existing when the local and general churches affiliated with one another. The Georgia Supreme Court, affirming the judgment rendered for plaintiffs in the trial court, stated that the evidence presented an issue for the jury to decide, "whether the totality of actions of the general church amounted to a substantial abandonment of, or departure from, the original tenets of faith and practice by the general church." *Presbyterian Church v. Eastern Hts. Presbyterian Church,* 224 Ga. 61, 159 S.E. 2d 690 (1968). The United States Supreme Court granted certiorari to consider the First Amendment questions raised. In holding that the Georgia courts had violated the First Amendment, the Supreme Court said:

> "The departure-from-doctrine element of the implied trust theory which they applied requires the civil judiciary to determine whether actions of the general church constitute such a 'substantial departure' from the tenets of

Atkins v. Walker

faith and practice existing at the time of the local churches' affiliation that the trust in favor of the general church must be declared to have terminated. This determination has two parts. The civil court must first decide whether the challenged actions of the general church depart substantially from prior doctrine. In reaching such a decision, the court must of necessity make its own interpretation of the meaning of church doctrines. If the court should decide that a substantial departure has occurred, it must then go on to determine whether the issue on which the general church has departed holds a place of such importance in the traditional theology as to require that the trust be terminated. A civil court can make this determination only after assessing the relative significance to the religion of the tenets from which departure was found. Thus, the departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role."

In reversing the judgment of the Georgia Supreme Court and remanding the case for further proceedings, the United States Supreme Court cautioned that the departure-from-doctrine element can play *no* role in any future judicial proceedings.

[5] The principles announced in *Hull* control disposition of the case presently before us. The fact that the controversy in the present case is between factions within a local church while in *Hull* the controversy was between local churches and the general church, is without significance insofar as the constitutional question presented by the record on this appeal is concerned. In neither case may decision be made to turn upon any determination by the civil courts as to departure-from-doctrine by one group or the other. That was precisely the issue submitted to the jury in the present case. The judgment appealed from, having been based upon determination of an issue which may not constitutionally be inquired into by a civil tribunal, must be reversed.

Disputes over church property may still be resolved, and occasionally regrettably must be resolved, in civil courts. As stated in *Hull*, "[c]ivil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church

---

property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." Since the decision in *Hull,* however, it is clear that civil courts must decide church property disputes without inquiring into underlying controversies over religious doctrines and without in any way basing decision upon any determination made upon such an inquiry.

The judgment appealed from is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judge VAUGHN concurs.

Judge BRITT dissents.